IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| MICHAEL CROW, | ) | CV 12-71-M-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SAFECO INSURANCE COMPANY OF ILLINOIS, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I. Introduction**

Plaintiff Michael Crow filed a declaratory judgment action seeking coverage under the policy of Defendant Safeco's insured, Richard Venable, for a second automobile accident he alleges was caused by Venable. Plaintiff settled with Venable for both accidents, releasing Venable but reserving the right to pursue Defendant for a second policy limits. In its counterclaim, Defendant argues that the Plaintiff lacks standing to pursue this action due to the fact that he expressly released Defendant's insured for all claims arising out of both

1

accidents.[1]  Plaintiff now moves to dismiss the lack of standing allegations in Defendant's counterclaim.  The motion to dismiss will be denied, but not for the reasons advanced by the Plaintiff.  As explained below, the Court concludes that the release is not void under *Watters*.  However, the Court finds that the Plaintiff has standing to proceed with his action at this time because the Court does not have before it sufficient facts to determine whether the reservation in the release provides Plaintiff with standing.  Thus, the ultimate decision on Plaintiff's standing must await development of a more complete factual record surrounding the execution of the release, and specifically the reservation language contained within the release.

## II.  Factual and Procedural Background

This case involves two motor vehicle accidents.  The first accident occurred on December 12, 2009, when Richard Venable rear-ended Plaintiff on Orange Street in Missoula, Montana.  Plaintiff experienced confusion, slurred speech, and difficulty communicating shortly after the first accident.  Plaintiff continued working that week despite these symptoms, and he was in a single car accident while working six days later.  Plaintiff drove off the road in his work vehicle and

---

[1] Defendant also alleges in its counterclaim that there is no coverage for the second accident under the terms of the policy; however, this issue is not raised in the subject motion to dismiss.

suffered physical injuries including a global traumatic brain injury. Plaintiff alleges the second accident was caused by a left temporal lobe hemorrhage he received in the first accident. Thus, he contends Venable also caused his second accident.

Venable was the insured under a Safeco automobile insurance policy at the time of the accident that includes liability coverage up to $300,000 for "any one auto accident." (Doc. 6 at 3.) Plaintiff signed a general release of all claims for both accidents against Venable in July 2010. The release contained the following provision: "[i]t is understood and agreed that this settlement does not release any claims against any insurer, including Releasees' insurer, Safeco. These claims may include but are not limited to pursuing Safeco for a second policy limit . . . ." (Doc. 4-2 at 2.) Despite the language in the release, Defendant now alleges Plaintiff cannot bring a direct claim against it because Venable is the proper party and Plaintiff released him from all claims for both accidents.

Plaintiff filed a declaratory judgment action seeking a declaration "that the Safeco Policy provides a second limit of $300,000.00 in liability coverage for the bodily injury and resulting damages Plaintiff suffered as a result of the Second Accident for which Venable is legally liable." (Doc. 1 at 3.) Plaintiff's complaint lacks any reference to the release and the reservation of his claim "for a second

policy limit" against Defendant. However, in its counterclaim Defendant relies on the release, and alleges that it constitutes a bar to the Plaintiff's claims. (Doc. 4 at 10.) Defendant attaches a copy of the written release to its answer and counterclaim. (Doc. 4-2.)

### III. Motion to Dismiss Standard

Dismissal of a counterclaim is determined under the same standard as a motion to dismiss a complaint. The counterclaim must allege sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts generally limit their considerations to the allegations in the complaint, or here, the counterclaim. *Id.* at 555-559. Those allegations are accepted as true and viewed in a light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider material properly submitted as part of the complaint without converting the motion to one for summary judgment. *United States v. Corinthian Colleges*, 655 F.3d

4

984, 999 (9th Cir. 2011). A court may also consider unattached evidence the complaint necessarily relies upon if referenced in the complaint, central to the claim, and unquestionably authentic. *Id.* Plaintiffs are not required to anticipate defendants' affirmative defenses or attempt to plead around them. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980).

Because Plaintiff is seeking dismissal of Defendant's counterclaim the counterclaim is the primary document subject to review rather than the complaint. As previously stated, Defendant attached Venable's Safeco policy and the release to its counterclaim, so those documents may be considered in deciding Plaintiff's motion to dismiss.

## IV. Analysis

### A. Standing

Defendant argues Plaintiff does not have standing because a third-party cannot bring a direct action against an insurer until liability is established. (Doc. 9 at 9.) Defendant contests liability and causation for the second accident and the release did not concede liability for the second accident. Plaintiff argues Defendant is attempting a "double cross" because it specifically permitted a reservation of a second policy limits against it in the release, but now says he lacks standing. (Doc. 10 at 1-2.) Plaintiff says he released Venable because Defendant

specifically agreed to the reservation in the release. (Doc. 10 at 2.)

"[T]he long-established rule in Montana [is] that a direct action against an insurer does not lie until the liability of the insured has been established, and our further long-standing rule [is] that the injection of insurance into the action determining liability is improper." *Ulrigg v. Jones*, 907 P.2d 937, 943 (Mont. 1995)(internal citations omitted). This rule seeks to eliminate confusion and prejudice against the insured and the injured party. *Id.* Montana does allow a direct action against an insurer under Mont. Code Ann. § 33-18-242 for actual damages for violation of the Unfair Trade Practices Act ("UTPA"). *Id.*

While its assertion of the law is correct, Defendant's reliance on *Ulrigg* to establish Plaintiff's lack of standing in this case is unpersuasive. The factual and procedural history in Plaintiff's case is different from that in *Ulrigg* in significant respects. In *Ulrigg*, the plaintiff suffered injuries in a car accident caused by a woman driving her father's vehicle. The plaintiff sued the owner of the vehicle instead of the driver, and when that claim failed tried to add the owner's insurer because an action against the driver was time-barred. *Ulrigg*, 907 P.2d at 942-943. The Montana Supreme Court did not permit a direct action against the insurer because the plaintiff had not proven liability or damages against the driver. *Id.*

6

The factual setting in this case is different than what occurred in *Ulrigg*. Here, the Plaintiff sued the driver of the vehicle, and Venable admitted liability for the first accident. The release expressly reserved Plaintiff's right to pursue Defendant for another policy limit. Thus, unlike *Ulrigg*, the Plaintiff has sued the correct entity, based upon his belief that he preserved a claim against Defendant pursuant to the reservation language contained within the release. There was no release or any contractual relationship between Ulrigg and the insurer. The plaintiff in *Ulrigg* sued the wrong person and attempted to rectify her error by naming the insurer after the applicable statute of limitations had run. Plaintiff sued the correct person here, then settled his claims for both accidents with Venable while reserving a right to pursue Defendant. He is now asking the Court to determine whether coverage exists for him to do so. It would be inappropriate and inequitable to extend the holding in *Ulrigg* to the facts of this case.

In *Safeco Ins. Co. v. Montana Eighth Judicial Court*, 2 P.3d 834 (Mont. 2000), Safeco sought a writ of supervisory control asking the Montana Supreme Court to stay a third party's declaratory judgment claim against it until a settlement had been reached or a judgment entered against its insured. 2 P.3d at 837-838. The Court cited *Ulrigg* in noting that Montana law does not permit a plaintiff to bring a direct action against an insurer until liability of the insured is

established. *Id.* at 838. The Court distinguished the plaintiff's case against Safeco, however, because the plaintiff's claim was a declaratory judgment action seeking advanced payment of medical costs where liability was not in dispute, not a UTPA claim against Safeco. *Id.* Thus, the bar prohibiting a direct action against insurers did not apply to the plaintiff in *Safeco*.

    *Safeco* seems to support a direct claim by a third-party claimant against an insurer where the claimant is seeking to establish coverage pursuant to a declaratory judgment action and liability is reasonably clear. *See In re W.R. Grace & Co.*, 446 B.R. 96, 127 (Del. 2011) (*Safeco* cited for the proposition that third parties can sue insurers directly in auto accident cases); *Dubray v. Farmers Ins. Exchange*, 36 P.3d 897, 899 (Mont. 2001) (*Safeco* did not authorize declaratory judgment actions to determine an insurer's liability prior to resolution of the underlying claim except for damages where liability is reasonably clear). Although a settlement was reached with the insured, Plaintiff does not fit under the standing exceptions for declaratory judgment provided in *Safeco* or *Dubray* because liability and causation for the second accident was not conceded in the release. Thus, absent the reservation in the release, Plaintiff's release of the insured for both accidents would appear to bar his claim against Defendant under *Safeco* because liability is not reasonably clear for the second accident.

Based on the unique facts of this case, the only possible basis for Plaintiff's claim arises from the reservation contained within the release.  As previously discussed, Plaintiff does not specifically plead the release language in his complaint as the basis to seek coverage under the Safeco policy for the second accident, but Safeco raised it as a defense in its counterclaim.  Thus, the Court will consider the release language reserving a claim against Safeco in determining the subject motion because: (1) Plaintiffs are not required to anticipate and plead around affirmative defenses or counterclaims, *Gomez*, 446 U.S. at 640; (2) Fed. R. Civ. P. 8(e) requires pleadings to be liberally construed so as to do substantial justice; and (3) a motion to dismiss Defendant's counterclaim is before the Court and Defendant attached the release to its pleading.

Plaintiff's standing to pursue his claim against Defendant for the second accident is dependent on the express reservation of this claim within the release. The release is a contract so the usual rules of contract interpretation apply to it. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible."  Mont. Code Ann. § 28-3-303. When the contract language is clear and unambiguous, the court's duty is to enforce the contract as written by the parties without application of the rules of construction.  *Keller v. Dooling*, 813 P.2d 437, 440 (Mont. 1991).  When

interpretation is needed, the contract is interpreted so as to make it lawful, operative, definite, reasonable, and capable of being carried out if possible without violating the parties' intent. Mont. Code Ann. § 28-3-301. "Where the question of intent depends upon the construction of an unambiguous contract, the question is one for the court alone; however, where a contract term is ambiguous or obscure or uncertain of meaning, the interpretation of the language, and thus, the determination of the parties' real intent, is a matter to be left to the consideration of the jury." *Klawitter v. Dettmann*, 886 P.2d 416, 420 (Mont. 1994).

The release language clearly and unambiguously reserves Plaintiff's ability to pursue a second policy limit against Defendant: "[i]t is understood and agreed that this settlement does not release any claims against any insurer, including Releasees' insurer, Safeco. These claims may include but are not limited to pursuing Safeco for a second policy limit . . . ." While this language appears unambiguous on its face, Defendant has created an ambiguity by arguing that Plaintiff lacks standing against Defendant despite the release language. Because this is a declaratory judgment action with no jury demand, the Court will be the final arbiter of the intent of the parties.

Interpretation of the release controls the issue of whether the claim can proceed, so the circumstances surrounding the execution of the release, the

10

reservation contained within it, and the intent of the parties must ultimately be resolved. In resolving these factual matters, the Court will consider the following:

- whether Defendant was a party to the release;
- whether the Venables were represented by counsel in the underlying settlement;
- if so, whether the Venables' counsel was retained by Defendant or whether Defendant had separate counsel in negotiating the release;
- whether Defendant requested all claims be released against it in the release;
- whether Plaintiff was represented by counsel, and, if so, what was their intent; and
- whether Defendant agreed to the reservation of the claim against it.[2]

Plaintiff has standing to proceed at this time, subject to the ultimate resolution of the factual issues described above.

### B. The Release is Not Void Under *Watters* and *Ridley*

The release here is not void due to Defendant's conditioning payment on a release of the Venables because liability for the second accident is not reasonably

---

[2]This is not intended to be an exhaustive recitation of every factual issue that may be relevant to the Court's inquiry. There may be other factual matters that need to be developed at the time of trial.

clear. Plaintiff's arguments under *Watters* and *Ridley* fail because the parties' experts disagree on the cause of Plaintiff's brain hemorrhage. In substance, Defendant contests liability and causation for the second accident.

It is a violation of Montana Code Annotated § 33–18–201 for an insurer to condition payment on a third party's agreement to provide a full and final release of all liability in favor of an insured if liability is reasonably clear. *Watters v. Guaranty Nat. Ins. Co*, 3 P.3d 626, 638 (Mont. 2000), *overruled in part by Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 725 (Mont. 2003). An insurer is also required to pay an injured third party's medical expenses prior to final settlement when liability is reasonably clear. *Ridley v. Guaranty Nat. Ins. Co.*, 951 P.2d 987, 992 (Mont. 1997). Neither of these requisites are limited to the minimum requirements set forth in § 61-6-103(2) of the Motor Vehicle Safety Responsibility Act (MVRA). *Shilhanek*, 70 P.3d at 725. These rules were enacted to protect innocent victims of car accidents from potential financial ruin due to the often devastating medical expenses incurred in accidents. *Ridley*, 951 P.2d at 993.

None of these rules apply to Plaintiff because liability and causation for the second accident is not reasonably clear. Defendant proffers Dr. Mack, a consulting neurosurgeon who examined Plaintiff, who does not believe Plaintiff's brain hemorrhage was caused by the first accident. (Doc. 13 at 5.) Plaintiff does

not provide any details in support of his contention that liability is reasonably clear for the second accident - presumably his expert will testify his brain hemorrhage from the first accident caused the second accident.  Although liability is clear for the first accident, it is far from clear for the second one.  Further, the reasoning behind the rule announced in *Ridley*, protecting innocent victims from financial devastation, does not apply here because Plaintiff was paid $300,000 under the first policy limits.  Plaintiff's arguments under *Watters* and *Ridley* fail.  Defendant's counterclaims will not be dismissed for conditioning payment on release of the Venables.

## V.  Conclusion

Plaintiff has standing at this stage of the proceedings because the Court does not have sufficient information to determine the intent of the parties in reserving the claims against Defendant for the second accident.  Plaintiff's motion to dismiss is denied, however, because the release is not void due to Defendant's conditioning payment on a release because liability and causation for the second accident is not reasonably clear.

Therefore, IT IS ORDERED that Plaintiff's motion to dismiss (doc. 5) is DENIED.

Dated this 7th day of November, 2012.

/s/ Dana L. Christensen

Dana L. Christensen, District Judge
United States District Court